UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAGDEEP SANGHERA and LYNELLE SANGHERA, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:10-CV-2414-B |
| WELLS FARGO BANK, N.A. and FEDERAL HOME MORTGAGE CORPORATION, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Wells' Fargo Bank, N.A. and Federal Home Loan Mortgage Corporation's Motion for Summary Judgment (doc. 13). For the following reasons, the Court finds Defendants' Motion for Summary Judgment should be, and hereby is, **GRANTED** in part and **DENIED** in part.

## I.

## BACKGROUND[1]

This case arises out of a foreclosure sale of a private residence. On or about June 1, 2007, Plaintiffs Jagdeep ("Jagdeep") Sanghera and Lynelle Sanghera ("Lynelle"), (collectively "Plaintiffs" or "Sangheras") refinanced their home located at 1311 Ashemore Court, Midlothian, Texas 76065 (the "Property"). Pl.'s Resp. 3. Plaintiffs executed a Note secured by a Deed of Trust, payable to

---

[1] The facts are derived from the parties' pleadings and from the evidence contained in the summary judgment record. Unless characterized as a contention by one of the parties, these facts are undisputed.

1

Wells Fargo Bank, N.A. ("Defendant(s)" or "Wells Fargo") Pl.'s App. 7–18. In September 2009,

Plaintiffs fell behind on their mortgage payments under the Note and Deed of Trust. Def.'s App. 3.[2]

In December 2009, the Sangheras contacted Wells Fargo asking how to obtain a loan modification. Pl.'s Resp. 4. On or about January 28, 2010, the Sangheras entered into a Home Affordable Modification Program Loan Trial Period ("HAMP trial plan"). Pl.'s App. 71–75. Essentially, the HAMP trial plan required Plaintiffs to perform two distinct acts. First, Plaintiffs were required to make payments in the amount of $1,975.73 on or before March 1, 2010; April 1, 2010; and May 1, 2010. *Id.* at 73. Second, they were required to provide documentation to verify their income and determine their eligibility for possible loan modification. *Id.* at 71. The HAMP trial plan states that, in exchange for Plaintiffs' performance, and conditioned on a finding that they were qualified, "[Wells Fargo] will provide [] a Loan Modification Agreement." *Id.* It is undisputed that Plaintiffs made all three payments under the HAMP trial plan on time. Pl.'s Resp. 4; Def.'s Br. In Support of Mot. For Summ. J. ("Def.'s Br.") 4. The parties dispute whether the Sangheras provided the proper documents to verify their income under the HAMP trial plan.

According to Plaintiffs, during the months following their May 1, 2010 payment under the HAMP trial plan, they corresponded with a number of Wells Fargo representatives regarding the status of their HAMP trial plan and potential loan modification. Plaintiffs assert that on June 11, 2011, they spoke with Wells Fargo representative Loretta Alva, who instructed them to submit additional documentation. According to Plaintiffs, Wells Fargo confirmed receipt of the appropriate

---

[2] Plaintiffs do not identify exactly when they fell behind on making their mortgage payments, only that they continued to make payments in 2008 until they had exhausted all resources. Pl.'s Resp. 3. Defendants' uncontroverted summary judgment evidence, however, makes clear that Plaintiffs failed to make their September 2009 payment.

additional documents on June 17 and June 25, 2010. Pl.'s Resp. 5. Plaintiffs state that in July 2010, Wells Fargo refused to accept payment, but told Plaintiffs they would not foreclose while Plaintiffs' documents were under review. *Id.* According to Jagdeep Sanghera, on July 9, 2010, Wells Fargo representative Erma Russell instructed Plaintiffs to again submit additional documentation. Jagdeep Sanghera asserts that he faxed the required documents later that day. *Id.* Plaintiffs further allege that on July 15, 2010, Ms. Russell informed Jagdeep that he had been approved for a loan modification. *Id.*; Pl.'s App. 63. After not receiving any loan modification documents from Wells Fargo,  Jagdeep called Wells Fargo in August 2010 and was told his loan modification was being reviewed by Federal Home Loan Mortgage Corporation ("FHLMC"). Pl.'s Resp. 6. Jagdeep asserts that in September 2010, Joan, a Wells Fargo representative, contacted him and requested additional financial information. *Id.* Then, on or around September 6, 2010, Plaintiffs received an Escrow Disclosure Statement and Notice of New Mortgage Payment, detailing the increase in projected property taxes and/or insurance premiums that would apply should Plaintiffs' loan be "reinstate[d] . . . or otherwise become current." Pl.'s App. 61.

On or around September 7, 2010, a Substitute Trustee conducted a foreclosure sale of the Property. The parties dispute whether the proper notices were sent to Plaintiffs prior to the foreclosure sale. At the foreclosure sale, FHLMC was the successful bidder. Def.'s Br. 4; Def.'s App. 45.

On October 25, 2010, Plaintiffs filed suit in Texas State court against Defendants alleging claims for breach of contract, anticipatory breach of contract, negligent misrepresentation, gross negligence, common law tort of unreasonable collection efforts, violations of the Texas Debt Collection Practices Act ("DCPA"), violations of the Texas Deceptive Trade Practices Act

3

("DTPA"), suit to quiet title, trespass to title, and seeking an accounting and declaratory judgment. Pl.'s Orig. Pet. Defendants removed the present action to this Court. 7–11.Plaintiffs remain in possession of the Property. Defendants have moved for summary judgment on all of Plaintiffs' claims. The briefing on Defendants' Motion for Summary Judgment is complete, and the motion is ripe for decision.

## II.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and record evidence show no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The movant bears the burden of proving no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Where the nonmovant bears the burden of proof at trial, the movant need not support its motion with evidence negating the nonmovant's case. Instead, the movant may satisfy its burden by pointing to the absence of evidence to support an essential element of the nonmovant's case. *Id*; *Little,* 37 F.3d at 1075.

Once the movant has met its burden, the nonmovant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the nonmoving party must go beyond the mere pleadings and "come forward with

4

'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed R. Civ. P. 56(e)); *see Celotex*, 477 U.S. at 324. The evidence presented by the nonmovant must "support each essential element of its claims on which it will bear the burden of proof at trial." *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the nonmovant. *Id.*

## III.

## ANALYSIS

A.    *Breach of Contract*

Plaintiffs allege Defendants breached the Deed of Trust by failing to provide proper notice and by conducting a foreclosure sale after waiving any right to do so. Pl.'s Orig. Pet. 7; Pl.'s Resp. 8–14. Under Texas law, the elements of a breach of contract action are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Am. Gen. Life Ins. Co. v. Kirsch*, 378 F. App'x 379, 383 (5th Cir. 2010) (citing *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (internal quotations omitted). Each basis for Plaintiffs' breach of contract claim will be addressed in turn.

1.    *Failure to Provide Proper Notice*

The Deed of Trust states in part that "[a]ll rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law." Pl.'s App. 15. Texas Property Code Section 51.002 requires that a debtor receive both a notice of sale and a notice of default with an opportunity to cure. Tex. Prop. Code § 51.002(b), (d). The notice of default must

provide the debtor at least 20 days to cure the default before a notice of sale can be given. *Id.* at § 51.002(d). The notice of sale must be provided at least 21 days before the date of the sale. *Id.* at § 51.002(b).

It is unclear from the Sangheras' pleadings and Response to Defendant's Motion for Summary Judgment whether they are challenging the notice of default, the notice of sale, or both. In an abundance of caution, the Court will address both concerns. In their Response, the Sangheras conclude that "Plaintiffs have presented evidence that they never received the notice of default and opportunity to cure." Pl.'s Resp. 14. Other than Jagdeep's own affidavit, Plaintiffs fail to identify any evidence in the summary judgment record that plausibly leads to this conclusion. Similarly, Plaintiffs fail to introduce any additional evidence that they did not receive proper notice of the foreclosure sale. Defendants, on the other hand, have provided a notice of default and opportunity to cure dated October 18, 2009, that has been unchallenged by Plaintiffs. Def.'s App. 20–21. Defendants have also provided a notice of sale dated August 5, 2010, that has been unchallenged by Plaintiffs. Def.'s App. 25–26. Defendant's October 18, 2009 notice of default was provided almost ten months in advance of the notice of sale, a period well beyond the 20-day minimum provided for in the statute. Defendant's August 5, 2010 notice of sale was provided over 30 days in advance of the September 7, 2010 foreclosure sale, a period beyond the 21-day minimum provided for in the statute. Plaintiffs self-serving statements alleging Defendant failed to provide proper notice, without more, are not enough to show Defendants breached the Deed of Trust and defeat Defendants' motion for summary judgment. *See Smith v. Sw. Bell Tel. Co.*, 2012 WL 28256 (5th Cir. Jan. 5, 2012).

    2.    *Waiver of Prior Breach*

Plaintiffs also allege that Defendants breached the Deed of Trust when Wells Fargo

accelerated the Note and conducted a foreclosure sale after having waived any such right. Pl.'s Resp. 8. Plaintiffs allege Defendants' actions from December 2009 to September 2010—including any actions regarding loan modifications or promises not to foreclose—constituted a waiver of Defendants' right to accelerate and foreclose. *Id.* at 13. Defendants counter that Plaintiffs first breached the Deed of Trust by falling behind on their loan payments in September 2009, prior to any action by Wells Fargo.

Under Texas law, a "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). To prove waiver, a party must show "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id.*

In this case, the terms of the Deed of Trust and the HAMP trial plan expressly preclude any such alleged waiver on the part of Wells Fargo. The terms of the Note state in relevant part that "[a]ny forebearance by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy." Pl.'s App. 14. The terms of the HAMP trial plan further provide that:

> When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of , the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents.

In short, the plain terms of the Deed of Trust and the HAMP trial plan make clear that Defendants' forebearance from immediate foreclosure and resulting loan modification discussions, did not constitute a waiver of the Defendants' rights stemming from Plaintiffs' breach.

7

Plaintiffs have failed to provide sufficient summary judgment evidence that Defendants breached the Deed of Trust by either failing to provide proper notice, or by waiving the right to accelerate and foreclose after Plaintiffs' initial breach.[3] Accordingly, Defendants' Motion for Summary Judgment on Plaintiffs' Breach of Contract Claim is **GRANTED**.

B.      *Anticipatory Breach of Contract*

Plaintiffs also argue Defendants repudiated their obligations under the Deed of Trust giving rise to a claim for anticipatory breach of contract. Pl.'s Resp. 18. Under Texas law, in order to prevail on a claim for anticipatory breach, a plaintiff must establish "(1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party." *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004). In order for a party to absolutely repudiate an obligation, "a party's declaration of intent to abandon must be made positively and unconditionally, with the fixed intention to abandon, renounce, and refuse to perform his obligation." *Watson v. Citimortgage, Inc.*, No. 4:10-cv-707, 2012 WL 381205, at *6 (E.D. Tex. Feb. 3, 2012).

In their Response, Plaintiffs maintain Defendants repudiated an obligation under the Note and Deed of Trust when they failed to provide a permanent loan modification. Pl.'s Resp. 18. In support, Plaintiffs cites to various phone conversations where Wells Fargo representatives allegedly informed Plaintiffs that they either would be approved for loan modification, or had already been

---

[3] In their Response, Plaintiffs appear to also argue for the first time that Defendant breached the terms of the HAMP trial plan. The Court need not consider, however, whether Defendant breached this unilateral contract because Plaintiffs failed to assert this cause of action with respect to the HAMP trial Plan in their Original Petition. Pl.'s Orig. Pet. 7 ("Defendants wrongfully foreclosed on the Property and have breached the Deed of Trust Contract.")

approved for one. *Id.* Plaintiffs also rely on the Escrow Disclosure Statement and Notice of New Mortgage Payment to demonstrate that they were approved for a loan modification. Pl.'s App. 61.

Plaintiffs fail, however, to identify any obligation of the Defendants under the Note and Deed of Trust to provide a permanent loan modification. With no obligation to act there is necessarily no breach of duty.[4]

Plaintiffs have failed to provide sufficient summary judgment evidence that Defendant anticipatorily breached the Deed of Trust by failing to provide a permanent loan modification. Accordingly, Defendants' Motion for Summary Judgment on Plaintiffs' claim for Anticipatory Breach is **GRANTED**.

C.      *Negligent Misrepresentation/Gross Negligence*

Next, Plaintiffs argue Wells Fargo's statements promising a loan modification, promising not to foreclose, and stating Plaintiffs had been approved for a loan modification constituted an actionable negligent misrepresentation. Pl.'s Resp. 22. Plaintiffs further contend that these same events constituted gross negligence on the part of Defendant. Under Texas law, the elements of a negligent misrepresentation claim are:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

---

[4]The Court need not consider whether Defendant anticipatorily breached a written loan modification or the HAMP trial plan as Plaintiffs' claim for anticipatory breach of contract was explicitly plead in the context of the Deed of Trust. Furthermore, Plaintiffs have failed to identify any written loan modification that would survive the Statute of Frauds.

In negligence actions, the economic loss doctrine helps Courts differentiate between those damages that are properly recoverable under a negligence theory, and those that lie in contract. The economic loss rule dictates that "[w]hen the plaintiff's only harm is an economic loss caused by the defendant's failure to perform a contract, the defendant has breached a contractual duty, not a tortious one." *Belanger v. BAC Home Loans Servicing, L.P.*, No. W-11-CA-00086, 2011 WL 6987152, at *3 (W.D. Tex. Dec. 9, 2011) (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). Therefore, when a plaintiff alleges only economic loss arising out of a contractual relationship between the parties, the plaintiff is precluded from proceeding under a negligence cause of action. *See id.*; *Defranceschi v. Wells Fargo Bank, N.A.*, No. 4:10-CV-455-Y, 2011 WL 3875338, at *7 (N.D. Tex. Aug. 31, 2011).

In this case, Plaintiffs' negligent misrepresentation claim fails because it is barred by the prevailing law on damages and the economic loss doctrine. In their Original Petition, Plaintiffs claim to have suffered the following damages: (1) reasonable attorney's fees; (2) loss of creditworthiness; (3) mental anguish; (4) loss of title to the Property; and (5) "value of the time lost in attempting to correct the Defendant's records."[5] Pl.'s Orig. Pet. 12. Plaintiffs argue this variety of alleged injuries circumvents the economic loss rule.

The Court disagrees for several reasons. First, under Texas law, reasonable attorney's fees are not recoverable in a negligence action. *See Gulf States Utilities Co. v. Low*, 79 S.W.3d 561, 568 (Tex.

---

[5] The Court is perplexed by Plaintiffs' claim for loss of time. The Court can only assume Plaintiffs are referring to their alleged frustration in having to repeatedly provide documents to Defendant as required under the terms of the HAMP trial plan—a set of circumstances that clearly does not rise beyond mere triviality. Regardless, the parties do not fully address the merits of such an issue in their briefing and the Court will not do so here.

10

2002). Likewise, Texas law does not recognize negligent infliction of emotional distress as a viable cause of action. *See Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). Furthermore, other than Jagdeep's self-serving affidavit, Plaintiffs have pointed to no evidence that their credit ratings have been damaged. *See e.g.* Pl.'s Resp. 25. Finally, the economic loss rule bars Plaintiffs' negligent misrepresentation claim. Any rights or obligations of the parties stemmed from the Deed of Trust. Plaintiffs' alleged loss of title and creditworthiness are economic damages that arise directly from the alleged breach of this contractual relationship; thus, Plaintiffs' tort cause of action is barred by the economic loss rule. *See Defranceschi*, 2011 WL 3875338, at *7; *Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 453 (Tex. App.-Dallas 2002) (noting that denial of various loans and the payment of higher interest rates are economic damages not recoverable in a simple negligence action).

Plaintiffs' negligent misrepresentation claim is barred by the economic loss rule. Accordingly, Defendants' Motion for Summary Judgment on Plaintiffs' negligent misrepresentation claim is **GRANTED**.

Plaintiffs' claim for gross negligence is based upon the same allegations as their negligent misrepresentation claim. Since Plaintiffs' negligent misrepresentation claim is barred in its entirety under the economic loss rule, Plaintiffs' claim for gross negligence likewise fails. Accordingly, Defendants' Motion for Summary Judgment on Plaintiffs' gross negligence claim is **GRANTED**.

D.    *Common Law Unreasonable Collection Efforts*

Next, the Court will consider Plaintiffs' common law claim for unreasonable collection efforts. Unreasonable collection has evolved in Texas courts as an intentional tort covering a variety of conduct—so much so, that the elements of unreasonable collection have often evaded precise

definition. *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.-Dallas 2008). Texas Courts have accepted, however, that the tort may be defined as "efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Id.* (citations omitted).

Plaintiffs have failed to produce any evidence that Wells Fargo engaged in unreasonable collection efforts. Plaintiffs allege that Wells Fargo subjected them to unreasonable collection efforts by failing to provide information regarding any right to cure or potential loan modification, promising not to foreclose, and foreclosing after accepting payments under the HAMP trial plan Pl.'s Resp. 27.

The Court disagrees for several reasons. First, failing to provide information is itself not considered a collection effort. *See Narvaez v. Wilshire Credit Corp.*, 757 F.Supp.2d 621, 636 (N.D. Tex. 2010). Second, the Court is unaware of—and Plaintiffs have provided no authority—as to how promising not to foreclose on a property, can, without more, be considered willful, wanton, or malicious harassment. Third, Plaintiffs concede that they became unable to make payments on their mortgage in 2008. Pl.'s App. 2. Plaintiffs do not allege that they ever became current on their payments under the Note, only that they completed the payments required under the HAMP trial plan. "Texas courts have found debt collection efforts tortious when lenders attempted to collect debts they were not owed." *Narvaez*, 757 F.Supp.2d at 635 (citations omitted). Where, as in this case however, a debt is owed to the lender, a claim for unreasonable debt collection efforts cannot survive when the lender simply tries to recover the debt, even if the parties dispute the amount of the debt owed. *See Id.*; *Defranceschi*, 2011 WL 3875338, at *6. The course of conduct alleged by Plaintiffs and contained in the summary judgment record does not, as a matter of law, rise to a level of "efforts that amount to a course of harassment that was willful, wanton, malicious." At most, Defendants'

12

conduct constituted mere negligence, and such acts are not recoverable under an unreasonable collection efforts claim. *See Narvaez*, 757 F.Supp.2d at 636.

Plaintiffs have failed to produce sufficient summary judgment evidence that Defendants engaged in unreasonable debt collection efforts. Accordingly, Defendants' Motion for Summary Judgment on Plaintiffs' Common Law Unreasonable Debt Collection Efforts claim is **GRANTED**.

E.    *Violations of the Texas Debt Collection Practices Act*

The Court next turns to Plaintiffs' claims Defendant violated various provisions of the Texas Debt Collection Practices Act ("DCPA"). Tex. Fin. Code §§ 392.001 et seq. Plaintiffs allege Defendants violated the following provisions of the DCPA: §§ 392.301(a)(8); 392.303(a)(2); 392.304(a)(8), (19).

The DCPA prohibits a variety of conduct by debt collectors in the course of debt collection. *See e.g.* Tex. Fin. Code §§ 392.301–.304. As an initial matter, Defendants argue Plaintiffs' claims under the DCPA fail as a matter of law because foreclosure actions do not constitute "debt collection" as envisioned by the statute. Def.'s Br. 14. In support, the Defendants cite to a number of cases holding that foreclosure actions are not debt collection proceedings under the federal Fair Debt Collection Practices Act. *Id.* at n.61.  In a recent case out of the Northern District of Texas, the district court noted, however, that Texas courts have not decided this issue with regard to the DCPA. *Biggers v. BAC Home Loans Servicing*, 767 F.Supp.2d 725, 730–32 (N.D. Tex. 2011). In *Biggers*, the court made an "*Erie* guess," and concluded that "the []DCPA can apply to actions taken in foreclosing real property." *Id.* at 732. The Court agrees with the conclusion reached by the court in *Biggers*.

Because the Defendants' alleged actions fall within the purview of the DCPA, the Court now

turns to whether Plaintiffs have produced sufficient summary judgment evidence that the Defendants violated the terms of the relevant statutes.

       1.     *Subsection 392.301(a)(8)*

Subsection 392.301(a)(8) of the Texas Finance Code prohibits debt collectors from "threatening to take an action prohibited by law." Tex. Fin. Code § 392.301(a)(8). Plaintiffs argue Defendants violated the statute when they threatened to foreclose without first sending a notice of default and opportunity to cure, in violation of the Texas Property Code § 51.002(d). Pl.'s Resp. 32. As discussed *supra* in Part III, Section A, Subsection 1, Plaintiffs have failed to provide sufficient summary judgment evidence that they did not receive proper notice. Therefore, Plaintiffs have failed to show that the Defendants threatened to foreclose without proper authority under the law. Accordingly, the Defendants' Motion for Summary Judgment on Plaintiffs' claim for violation of § 392.301(a)(8) under the DCPA is **GRANTED**.

       2.     *Subsection 392.303(a)(2)*

Subsection 392.303(a)(2) of the Texas Finance Code prohibits debt collectors from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the [debt] obligation *unless* the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code § 392.303(a)(2) (emphasis added). Without providing any explanation, Plaintiffs argue they have unlawfully incurred late fees and other charges, as evidenced by what appear to be three accounting invoices. Pl.'s Resp. 31; Pl.'s App. 82–84. The Note and Deed of Trust, however, expressly authorize the lender to demand fees and charges, which by the terms of the statute are not prohibited. Pl.'s App. 11–17. Plaintiffs provide no evidence and no explanation regarding how the alleged unlawful

14

charges violated the statute. Accordingly, Defendants' Motion for Summary Judgment on Plaintiffs'
claim for violation of § 392.303(a)(2) under the DCPA is **GRANTED**.

      3.       *Subsections 392.304(a)(8), (19)*

Subsection 392.304(a)(8) of the Texas Finance Code prohibits a debt collector from
"misrepresenting the character, extent, or amount of a consumer debt . . . ." Tex. Fin. Code
§ 392.304(a)(8). Subsection 392.304(a)(19) operates effectively as a "catch-all" provision,
prohibiting a debt collector from "using any other false representation or deceptive means to collect
a debt or obtain information concerning a consumer." Tex. Fin. Code § 392.304(a)(19). Plaintiffs
argue Wells Fargo made an unlawful representation under these statutes when on July 15, 2010, after
completing the HAMP trial plan, a Wells Fargo representative expressly told Plaintiffs that Wells
Fargo and FHLMC had approved Plaintiffs for a permanent loan modification. Pl.'s Resp. 31.

In order for a statement by a party to constitute a misrepresentation under the DCPA,
Defendant must have made a false or misleading assertion. *Narvaez*, 757 F.Supp.2d at 632 (citing
*Reynolds v. Sw. Bell. Tel., L.P.*, No. 2-05-356-CV, 2006 WL 1791606, at *7 (Tex. App.-Fort Worth
June 29, 2006, pet. denied). In this case, Plaintiffs have provided evidence that Wells Fargo misled
Plaintiffs by informing them that they were approved for a loan modification. In support, Plaintiffs
reference a July 15, 2010 entry in a Wells Fargo call log, which states: "FHLMC POD APPROVAL
CALL - RIGHT PARTY CONTACT -AGREE TO TERMS -CUSTOMER AGREED TO
MODIFICATION." Pl.'s App. 63. According to the call log, however, the very next day Wells Fargo
revised the status of Plaintiffs' account and placed his loan modification back under review. *Id*. Based
on Sanghera's affidavit and the call log from Wells Fargo, Plaintiffs have provided sufficient evidence
to create a genuine issue of material fact as to whether Defendants misled Plaintiffs in violation of

the DCPA. Accordingly, Defendants' Motion for Summary Judgment on Plaintiffs' claims for violations of § 392.304(a)(8), (19) under the DCPA is **DENIED**.

F.      *Violations Under the Texas Deceptive Trade Practices Act*

Section 392.404 of the Texas Finance Code includes a tie-in provision that states any violation under the DCPA will also constitute a deceptive trade practice, actionable under the Texas Deceptive Trade Practices Act ("DTPA"). Plaintiffs argue they are thus entitled to damages under the DTPA for any violations that may be proven under the DCPA. Pl.'s Resp. 33. Defendants counter that Plaintiffs lack standing under the DTPA because they have failed to prove they are "consumers" under the statute, and are therefore barred from recovery. Plaintiffs do not challenge that they qualify as "consumers" under the DTPA, only that such a requirement is invalid. The issue then becomes whether Plaintiffs may recover damages under the DTPA via the DCPA "tie-in" provision, absent a finding they are "consumers" under the DTPA.

This precise issue was discussed at length by the Fifth Circuit in *Cushman v. GC Services, L.P.* 397 Fed. App'x 24, 27–29 (5th Cir. 2010). In *Cushman*, the Fifth Circuit found that "a claimant under the DTPA must still have 'consumer' status in order to have standing." Therefore, Plaintiffs are barred from maintaining any action or damages under the DTPA. Accordingly, Defendants' Motion for Summary Judgment on Plaintiffs' DTPA claim is **GRANTED**.

G.      *Trespass to Try Title/Suit to Quiet Title*

Trespass to try title and suit to quiet title are two distinct causes of action. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.-Corpus Christi 2001). Trespass to try title is a statutory cause of action that is the method used for determining title to real property. Tex. Prop. Code § 22.001. A suit to quiet title is an equitable action that clears invalid charges against the title. *Fricks*, 45 S.W.3d

16

at 327. To prevail on a trespass to try title action, a plaintiff must prove title to the property by: "(1) proving a regular chain of conveyances from the sovereign, (2) establishing superior title out of a common source, (3) proving title by limitations, or (4) proving title by prior possession coupled with proof that possession was not abandoned." *Caress v. Lira*, 330 S.W.3d 363, 364 (Tex. App.-San Antonio 2010) (citations omitted). To prevail on a suit to quiet title action, a plaintiff must prove the strength of their own title, not the weaknesses of their adversary's title. *Fricks*, 45 S.W.3d at 327.

Plaintiffs' only basis for their trespass to try title and suit to quiet title claim is an allegation that the foreclosure was void because Defendants failed to provide proper notice. Pl.'s Resp. 36. As discussed *supra* Part III, Section A, Subsection 1, Plaintiffs' breach of contract claim for failure to provide notice fails. Plaintiffs failed to bring a wrongful foreclosure claim in their Original Petition, and the Court need not consider it now. Plaintiffs have failed to provide any competent summary judgment evidence that might support a finding they possess title to the property superior to Defendant's title. Accordingly, Defendants' Motion for Summary Judgment on Plaintiffs' Trespass to Try Title and Suit to Quiet Title claims are **GRANTED**.

H.    *Declaratory Judgment*

Defendants have also moved for summary judgment on Plaintiffs request for a declaratory judgment. In Plaintiffs' Original Petition, Plaintiffs ask the Court to issue a declaratory judgment finding that "Defendants have waived their right to accelerate and foreclose, and find that Defendants have violated the terms and spirit of the Deed of Trust and Note, and the Texas Property Code." Pl.'s Orig. Pet. 11. Plaintiffs base their request for declaratory judgment on their allegations that Wells Fargo breached the Deed of Trust by failing to provide proper notices and by foreclosing after allegedly waiving any right to do so. Plaintiffs' request is therefore entirely

17

duplicative of their breach of contract claim already addressed by the Court, and the Court need not consider it here. *See Narvaez*, 757 F.Supp.2d 636 (dismissing as redundant plaintiff's declaratory judgment request where the relevant issues were resolved through plaintiff's breach of contract claim) (citing *Steele v. Green Tree Servicing, LLC*, No. 3:09-CV-0603-D, 2010 WL 3565415, at *10 (N.D. Tex. Sept. 7, 2010). Accordingly, Defendants' Motion for Summary Judgment on Plaintiffs' Declaratory Judgment claim is **GRANTED**.

I.      *Accounting*

Finally, the Court turns to Defendants' Motion for Summary Judgment with regard to Plaintiffs' request for an accounting. "An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action." *Watson v. Citimortgage, Inc.*, No. 4:10-cv-707, 2011 WL 4526980, at *9 (E.D. Tex. Sept. 30, 2011) (quoting *Brown v. Cooley Enters., Inc.*, No. 3:11-cv-0124-D, 2011 WL 2200605, at *1 (N.D. Tex. June 7, 2011). "If Plaintiffs' request for an accounting is a remedy sought rather than a cause of action, the determination of whether an accounting would be an appropriate remedy must await the determination of the liability issues." *Id.* (citing *Shields v. Ameriquest Mortg. Co.*, No. 05-06-01647-CV, 2007 WL 3317533, at *2 (Tex. App.-Dallas 2007, no pet.).

With regard to their request for an accounting, Plaintiffs' Original Petition states in its entirety simply that "Plaintiffs request an Order for an accounting of all transactions on their mortgage loan." Pl.'s Orig. Pet. 10. From this alone, it is unclear whether Plaintiffs are requesting a suit in equity or a particular remedy. In their Response to Defendants' Motion for Summary Judgment, however, Plaintiffs state they are entitled to an accounting "[b]ecause Plaintiffs' causes of action should not be dismissed in their entirety." Pl.'s Resp. 38. The Court concludes, therefore,

that because of Plaintiffs' stated intent to rely on their other causes of action, Plaintiffs are merely requesting an accounting as a remedy rather than an independent cause of action. In this matter, Plaintiffs' DCPA claim survived summary judgment and, thus, Plaintiffs still have a viable claim upon which an accounting could attach. Therefore, at this time the Court denies consideration of Plaintiffs' request for an accounting and Defendant's Motion for Summary Judgment as to the same. *See Watson*, 2011 WL 4526980 at *9; *Narvaez*, 757 F.Supp.2d 636.

## IV.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. Summary judgment is granted for Defendants with respect to Plaintiffs' claims for breach of contract, anticipatory breach of contract, negligent misrepresentation, gross negligence, common law tort of unreasonable collection efforts, violations of §§ 392.301(a)(8), 392.303(a)(2) of the DCPA; violations of the DTPA, suit to quiet title, trespass to title, and request for declaratory judgment. Summary judgment is denied for Defendants with respect to Plaintiffs' claims for violations of § 392.304(a)(8), (19) of the DCPA and to the extent Plaintiffs' request for an accounting is relevant to such claim.

SO ORDERED.

Signed: February 21, 2012

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE